DEAN MORGAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morgan v. Commissioner
Docket No. 17186-80.
United States Tax Court
T.C. Memo 1982-520; 1982 Tax Ct. Memo LEXIS 230; 44 T.C.M. (CCH) 1091; T.C.M. (RIA) 82520; September 13, 1982. Lonnie G. McGee, for the petitioner. Kevin M. Bagley, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954 and Rule 180. [1] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. [2]
*231 OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined deficiencies in petitioner's Federal income taxes for 1976 and 1977 in the the amounts of $616.00 and $984.00, respectively. After a concession by petitioner of an alimony adjustment and by the express consent of the parties pursuant to Rule 41(b), the issues for decision are: (1) whether under section 162 petitioner is entitled to deduct expenses incurred in traveling between petitioner's residence and his place of work; and (2) whether the travel pay received by petitioner is includable in his gross income under section 61. [3]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by reference. Petitioner resided in San Diego, California, when the petition in this case was filed. Petitioner Dean Morgan *232 (petitioner) is an electrician and a member of Local 569 of the Electrician's Union in San Diego, California. Petitioner was employed as an electrician by Bechtel Power Corporation (Bechtel) for the period from November 11, 1975, through the time of trial at the San Onofre Nuclear Generating Station (SONGS). Petitioner secured his employment through his union. Bechtel had contracted with Southern California Edison to construct two nuclear reactor facilities (Units 2 and 3) at the SONGS site in February, 1974. Construction actually began in May, 1974. When the contract was executed, Unit 2 was originally scheduled to have been completed 64 months from the start of construction and Unit 3 was originally scheduled to have been completed 15 months after completion of Unit 2. During construction of Units 2 and 3, the estimated time of completion was updated once every six months based on actual construction experience. As of the time of trial, Bechtel's construction work on Units 2 and 3 had not yet been completed. During the entire period of construction on Units 2 and 3, Bechtel had substantial labor needs requiring electricians among others. When Bechtel required electricians, *233 an officer of Bechtel would contact a representative of the union and request that a certain number of workers be dispatched to the SONGS site. These employees were hired by Bechtel on an "as needed" basis. Such an employee could lose his job at the SONGS site by a layoff pursuant to a reduction-in-force, by being terminated for cause, or by a voluntary termination. The decision to lay off any given employee pursuant to a reduction-in-force was based on criteria established by Bechtel and was in the sole discretion of Bechtel. In making layoffs, the job performance of any given employee was the most critical factor in determining whether that employee would be laid off. In short, the worst workers would be laid off first and the better workers would be laid off last. In determining which employees would be laid off and which would stay, no consideration was given to the employee's seniority on the job, seniority with the union, or union status (i.e., local member vs. member working on a "travel card"). Representatives of Bechtel met periodically with representatives of the union to discuss construction progress and anticipated labor requirements. Bechtel currently administers *234 a maintenance and repair contract with respect to nuclear reactor Unit 1 and employs trade employees, such as petitioner, to do the work under the contract. Bechtel has similar contractual arrangements regarding maintenance on Units 2 and 3 when construction on those units is completed. It is conceivable that trade employees, such as petitioner, currently working at the SONGS site will continue to be so employed even after the initial construction projects have been completed. When petitioner was hired to work at the SONGS site, he claimed he had "no idea" how long his employment would list. Petitioner acknowledged that he had not held a job anywhere for as long a period as he had at SONGS. An official of petitioner's union acknowledged that the SONGS construction project was an unusual project in terms of duration and that his union had never supplied workers to another project that approached SONGS as to its duration. No representative of Bechtel ever told petitioner, or any other employee, that he was being hired on a temporary basis. In responding to requests for verification of petitioner's employment in April, May, and July, 1977, Bechtel stated that the probability *235 of employment was "indefinite." A trade employee, such as petitioner, could expect to be employed at the SONGS site by Bechtel as long as work was available and as long as the employee maintained a good job performance. During the entire period of petitioner's employment, Bechtel had substantial actual and forecasted labor requirements for electricians. Petitioner considered himself one of the "best" electricians. Bechtel highly regarded petitioner's job performance as an electrician as indicated by the fact that he was never laid off. Pursuant to the union agreement under which petitioner was employed at the SONGS site, petitioner was entitled to $12.60 and $14.00 during 1976 and 1977, respectively, in travel pay for every day he worked. The travel pay is sometimes referred to as subsistance pay. The amount was based on the distance from the job site to San Diego City Hall. Petitioner would have received the same amount of travel pay regardless of where he actually resided. During the taxable years 1976 and 1977, petitioner resided 65 miles from the SONGS site. During 1976 and 1977, he received travel pay from Bechtel in the amounts of $2,721.60 and $2,870.00, respectively, *236 and included these amounts in income on his 1976 and 1977 Federal income tax returns. Petitioner incurred $2,268.00 and $3,618.00 in expenses in traveling to and from the SONGS job site during 1976 and 1977, respectively. He deducted the respective amounts as business travel expenses on his 1976 and 1977 returns. Respondent disallowed the travel expense deductions on the basis that they were incurred while traveling to a location for an indefinite period. Respondent also disallowed a small amount of petitioner's alimony deduction and made other adjustments favorable to petitioner. OPINION The essential facts herein do not differ from those in Portillo v. Commissioner,T.C. Memo. 1982-518, issued on the same day that this opinion was issued, although there are some differences in the details. As we noted in Portillo v. Commissioner,supra, counsel for the parties agreed to try four test cases at one session of this Court, separating cases into groups based upon the period of time that was worked. [4] Petitioner was employed at the SONGS site for over 74 months at the time of trial. We find that petitioner's employment at SONGS was *237 indefinite during the taxable years. We are satisfied that for the reasons set forth in Portillo v. Commissioner,supra, petitioner is not entitled to deduct his daily travel expenses under section 162 and is required, as he did, to report his travel pay in his gross income under section 61. Accordingly, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable years, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. By stipulation, the following parties have agreed to be bound by the resolution of the issues in this case when the decision becomes final: Hurtado v. Commissioner, D.N. 18052-80; Rogers v. Commissioner, D.N. 18058-80; Garcia v. Commissioner, D.N. 18304-81; and Andrews v. Commissioner, D.N. 19337-81.↩
4. We believe this must have been at the insistence of petitioner's counsel since respondent makes no differentiation on this basis. When we consider that each of the different periods was sufficiently long in duration to support the same determination, we believe that the distinction made by petitioner's counsel is a differentiation without meaning. In fact, petitioner's counsel in his brief on behalf of the four test cases and one related case draws no such distinction. As we indicated in Portillo v. Commissioner,T.C. Memo. 1982-518↩, we believe one test case would have been sufficient.